UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-811-SP | Date | October 6, 2016 |
|---|---|---|---|
| Title | JEREMY PINSON v. PABLO PRIETO, et al. | | |

| Present: The Honorable | Sheri Pym, United States Magistrate Judge | | |
|---|---|---|---|
| Kimberly I. Carter | None | None |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiff:  Attorneys Present for Defendant:

None Present  None Present

**Proceedings:** (In Chambers) Order Granting in Part and Denying in Part Motions in Limine [376-78, 380-82] and to Exclude Expert Testimony [383, 385-87]

## I. INTRODUCTION

Before the court are: three motions in limine filed by plaintiff Jeremy Pinson (docket nos. 380-82); three motions in limine filed by defendants Pablo Prieto, Joshua Halstead, and Joseph Norwood (docket nos. 376-78); one motion to exclude expert testimony filed by defendants (docket no. 383); and three motions to exclude expert testimony filed by plaintiff (docket nos. 385-87). The parties filed their motions in limine on September 1, 2016, and their motions to exclude expert testimony on September 6, 2016. The parties then filed oppositions on September 15 and 19, 2016, and replies on September 22 and 26, 2016.

The court held a pretrial conference and heard argument on the motions on October 4, 2016. The court rules on each motion as set forth below, and for the reasons discussed at the pretrial conference and below.

## II. BACKGROUND

On September 17, 2010, plaintiff, a federal prisoner then proceeding pro se and in forma pauperis, filed a civil rights complaint pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). On August 15, 2011, plaintiff filed a First Amended Complaint ("FAC"). The gravamen of the FAC is that while plaintiff was housed at the U.S. Penitentiary in Victorville, California ("USP Victorville"), various employees of the Bureau of Prisons

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-811-SP | Date | October 6, 2016 |
|---|---|---|---|
| Title | JEREMY PINSON v. PABLO PRIETO, et al. | | |

("BOP") were deliberately indifferent to her safety and failed to place plaintiff in the segregated housing unit, allowing plaintiff to be assaulted by other inmates in violation of her Eighth Amendment rights. Plaintiff is currently housed at the U.S. Penitentiary in Terre Haute, Indiana.

Plaintiff obtained counsel in this case in August 2015, leading to a re-opening of the period for fact discovery on September 2, 2015 and again on May 4, 2016. Following the July 1, 2016 fact discovery cutoff and the August 19, 2016 expert discovery cutoff, trial is scheduled for October 17, 2016.

### III.
### MOTIONS IN LIMINE

**A.** **Legal Standard**

A party may use a motion in limine to exclude inadmissible or prejudicial evidence before it is actually offered at trial. See *Luce v. U.S.*, 469 U.S. 38, 40 n.2, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984). A motion in limine is "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child & Family Services*, 115 F.3d 436, 440 (7th Cir. 1997). It also reduces the likelihood that unduly prejudicial evidence will ever reach the jury, thereby relieving the trial judge from the formidable task of neutralizing the taint of any prejudicial evidence. *See Brodit v. Cabra*, 350 F.3d 985, 1004-05 (9th Cir. 2003) (citation omitted).

Motions in limine that seek exclusion of broad and unspecific categories of evidence, however, are generally disfavored. *Sperberg v. The Goodyear Tire and Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Courts have recognized that they are "almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007). Therefore, when confronted with this situation, "a better practice is to deal with questions of admissibility of evidence as they arise [in actual trial]" as opposed to tackling the matter in a vacuum on a motion in limine. *Sperberg*, 519 F.2d at 712; *see U.S. v. Marino*, 200 F.3d 6, 11 (1st Cir. 1999) (recognizing that proffered evidence can be more accurately assessed in the context of other evidence).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-811-SP | Date | October 6, 2016 |
|---|---|---|---|
| Title | JEREMY PINSON v. PABLO PRIETO, et al. | | |

Further, "a motion in limine should not be used to resolve factual disputes or weigh evidence." *C & E Services, Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). That is the province of the jury. *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Nor should a motion in limine be used as a substitute for a motion for summary judgment. *C & E Services*, 539 F. Supp. 2d at 323.

Regardless of a court's initial decision on a motion in limine, it may revisit the issue at trial. *See* Fed. R. Evid. 103, Advisory Committee's note to 2000 Amendment ("Even where the court's ruling is definitive, nothing in the amendment prohibits the court from revisiting its decision when the evidence is to be offered."); *Luce*, 469 U.S. at 41-42 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling."). "The Supreme Court has recognized that a ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court." *U.S. v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing *Luce*, 469 U.S. at 41-42). Rule 103 does not require a court to rule on a motion in limine. *CFM Commc'ns, LLC v. Mitts Telecasting Co.*, 424 F. Supp. 2d 1229, 1233 (E.D. Cal. 2005) (citation omitted).

**B.    Plaintiff's Motions in Limine**

    **1.    Plaintiff's Motion in Limine No. 1**

Plaintiff moves to exclude evidence of her criminal history and prior bad acts committed in prison facilities and prior to incarceration, on the grounds that such evidence is irrelevant, impermissible character evidence, and unduly prejudicial, pursuant to Rules of Evidence 401, 402, 403, 404, and 609.

        **a.    Convictions**

Rule 609 governs the use of criminal convictions to "attack[] a witness's character for truthfulness." Fed. R. Evid. 609(a). Evidence of a witness's prior conviction for a crime punishable by death or by imprisonment for over one year "must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant." *Id.* But evidence of such a conviction is not admissible for impeachment purposes "if more than 10 years have passed since the witness's conviction or release

Case 5:10-cv-00811-SP   Document 427   Filed 10/06/16   Page 4 of 20   Page ID #:7547

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-811-SP | Date | October 6, 2016 |
|---|---|---|---|
| Title | JEREMY PINSON v. PABLO PRIETO, et al. | | |

from confinement for it, whichever is later," unless "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1).

First, plaintiff argues her juvenile adjudications should be excluded under Rule 609(d). Defendants state they do not plan to introduce evidence of these adjudications unless plaintiff opens the door to them in some way. Thus, they will be excluded.

Plaintiff also seeks to exclude evidence of her conviction on six counts of embezzlement in 2003, for which she was sentenced to 36 months in the Oklahoma Department of Corrections. Defendants maintain this offense does not come within the scope of Rule 609(b), because plaintiff has never been released from custody following this conviction; rather, she was transferred from state to federal custody on June 2, 2006. But by its terms, Rule 609(b) applies when more than ten years have passed since the witness was released "from confinement for it" – with the "it" referring to the conviction sought to be used. That plaintiff has continuously been in custody on other convictions does not mean she is still confined on her 2003 convictions. Nor is the court persuaded by defendants' argument that, had plaintiff served her full 36-month sentence, she would not have been released until at least November 2006, less than ten years ago. Whatever the reason, the fact is that plaintiff was released from confinement on her embezzlement convictions more than ten years ago. As the court does not fine the probative value of the embezzlement convictions "substantially outweighs" the prejudicial effect, evidence of these convictions will be excluded.

In addition, on November 14, 2006, a jury in the United States District Court for the Western District of Oklahoma found plaintiff guilty of one count of making threats against the President, in violation of 18 U.S.C. § 871(a). *U.S. v. Pinson*, CR 06-114-1-R (W.D. Okla.), docket no. 66. On March 16, 2007, in a separate case in the Western District of Oklahoma, plaintiff pleaded guilty to one count of making a false statement, in violation of 18 U.S.C. § 1001(a)(2), and one count of threatening a juror, in violation of 18 U.S.C. § 876(c). *U.S. v. Pinson*, CR 07-23-1-R (W.D. Okla.), docket no. 28. On April 2, 2007, the United States District Court for the Western District of Oklahoma sentenced plaintiff to consecutive terms of 60 months for the false statement offense, 120 months for the juror threat offense, and 60 months for the threats against the President offense, for a total sentence of 240 months. *See id.*, docket no. 39 at 2. The next year, on November 5, 2008, plaintiff pleaded guilty in the Southern District of Texas to one count

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-811-SP | Date | October 6, 2016 |
|---|---|---|---|
| Title | JEREMY PINSON v. PABLO PRIETO, et al. | | |

of mailing threatening communications to a Secret Service Special Agent, in violation of 18 U.S.C. § 876.  *U.S. v. Pinson*, CR 08-283-1 (S.D. Tex.), docket no. 36.  The Southern District of Texas sentenced plaintiff to a total term of 24 months, with 12 months running concurrently with plaintiff's existing sentence and 12 months running consecutive to that sentence.  *Id.*, docket no. 46.

Plaintiff seeks to exclude the threats convictions under Rule 403.  Plaintiff contends her threats convictions have no factual nexus to any of the allegations or claims in this case, that these convictions have no bearing on her truthfulness, and that the undue prejudicial effect of these convictions substantially outweighs its probative value.  As to the conviction for threats to a juror, the court agrees the prejudice to plaintiff would be substantial and far greater than any probative value evidence of this conviction would provide.  The court finds the prejudicial effect of the other threats convictions is not so great.  Still, the probative value of these convictions is likewise limited.  As noted, Rule 609 provides for evidence of prior convictions to be used to impeach a witness's character as to truthfulness.  Although defendant argues these convictions show plaintiff's bias toward authority figures, the court finds the threats convictions do this only in a tangential respect, and thus would have little legitimate impeachment value.  As such, evidence of all of plaintiff's threats convictions will be excluded.

Plaintiff essentially acknowledges her conviction for making a false statement is admissible under Rule 609(a), and the court agrees.  The parties also agree defendants shall be limited introducing only the basis facts of the conviction, namely, the name of the conviction, its date, and the length of sentence imposed.  The parties do dispute whether defendants should be permitted to refer to the conviction when questioning witnesses other than plaintiff.  The court finds Rule 609 plainly permits prior convictions to be used to impeach a witness, but finds no basis in Rule 609 for use of the conviction for any other purpose.  It is possible that once the conviction is admitted it may become pertinent to the testimony of another witness; however, that is a matter that should be taken up at the time of trial.  Absent any further ruling permitting use of the conviction to question another witness, defendants must restrict their reference to the false statement conviction to their opening statement, examination of plaintiff, and closing argument.

      **b.**    **Prior Bad Acts**

Regarding plaintiff's alleged bad acts, plaintiff argues two of defendants' fact

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-811-SP | Date | October 6, 2016 |
|---|---|---|---|
| Title | JEREMY PINSON v. PABLO PRIETO, et al. | | |

witnesses, Jack Wilner and Sara Revell, as well defendants' three expert witnesses, Dr. James Pelton, Dr. Ralph Ihle, and D. Scott Dodrill, will all improperly testify to incidents demonstrating plaintiff is prone to instigating conflict with others, which is inadmissible character evidence under Rule 404. Plaintiff also contends this evidence is irrelevant to the facts and claims at issue in this case. Plaintiff states her Eighth Amendment claim is more limited than what is alleged in the FAC; namely, plaintiff claims defendants should have protected her based on her complaints of being at risk due to her homosexuality and informant status, but she has dropped claims that defendants should have known she was at risk due to incidents at prior prisons and her gang status.

Rule 404(b) makes evidence of other wrongs or acts inadmissible to provide "the character of a person in order to show action in conformity therewith," but may be admissible for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b); *see also* Fed. R. Evid. 405(b) (character evidence may be admissible if it is an essential element of the claim).

Defendants oppose plaintiff's motion to the extent it seeks to exclude evidence of these alleged bad acts, on the ground that plaintiff has failed to meet her burden of specifically identifying such evidence. Defendants also assert that the incidents plaintiff describes in her motion "are not 'bad acts' or 'character evidence' but rather historical facts confirming Plaintiff's actions during a time period made relevant by Plaintiff's allegations." Docket no. 392 at 7. Defendants claim plaintiff "cannot excise the events of 2007 from this case," and argue defendants should be allowed to refute plaintiff's claims by showing she was not in danger from others, as she alleges, but rather "posed a management problem because she was assaulting others." *Id.* In addition, defendants argue her shifting accounts of what led to her assault is relevant to her credibility.

As a general matter, the court finds plaintiff's gang status is not a matter than can be readily excised from evidence concerning her informant status, and to the extent plaintiff's prior bad acts are inconsistent with her claims of what led to her assault or otherwise impeach her credibility, defendants are permitted to introduce them under Rules 404, 405, 607, and 608. Nonetheless, there must be reasonable limits; defendants may not introduce evidence of every bad act committed by plaintiff to attack her credibility. The difficulty here is that plaintiff has not specifically identified the evidence she seeks to exclude. This may become clearer after the parties meet and confer further

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-811-SP | Date | October 6, 2016 |
|---|---|---|---|
| Title | JEREMY PINSON v. PABLO PRIETO, et al. | | |

regarding exhibits, as discussed at the hearing. Otherwise, this is a matter that must be taken up at the time of trial.

### 2. <u>Plaintiff's Motion in Limine No. 2</u>

Plaintiff moves to preclude defendants from introducing evidence or eliciting testimony about her litigation activity in other cases unrelated to this action, on the grounds that such evidence is irrelevant, impermissible character evidence, and unduly prejudicial, pursuant to Rules of Evidence 401, 402, 403, 404, and implicates documents that are inadmissible hearsay under Rule 802.

Defendants reference fourteen court filings from plaintiff's other litigation history. *See* docket no. 394-1, Exs. A-N. Defendants do not challenge plaintiff's motion to the extent it generally seeks to exclude evidence of prior litigation. Rather, defendants claim certain statements made within the fourteen court filings "are evidence of shifting explanations and contradictions on Plaintiff's part when discussing her incarceration at Victorville, her claims arising from that incarceration and her claimed injuries." Docket no. 394 at 5. Defendants argue these statements are admissible statements by a party opponent under Rule 801(d). *Id.* at 6. Defendants do not specifically cite to which statements within these attached court filings they seek to admit, but elaborated on them at the hearing.

In her reply, plaintiff acknowledges Exhibits H, J, K, and M are pleadings that pertain to the claims in this case, and therefore does not seek to exclude admission of those exhibits at trial. Docket no. 412 at 1. But plaintiff does seek to exclude admission of the remaining exhibits. Plaintiff contends filings she made when she was not at USP Victorville or that concern matters that occurred at other prisons are irrelevant.

As an initial matter, the court finds it would be improper to introduce evidence of filings from other cases simply to portray plaintiff as litigious. But statements made by plaintiff in other cases – whether or not those statements were made while she was at USP Victorville, and whether or not those statements directly pertain to incidents that occurred at USP Victorville – may be relevant to plaintiff's claims and credibility in this case, including statements inconsistent with her claimed security concerns leading up to the April 2008 assault at issue in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-811-SP | Date | October 6, 2016 |
|---|---|---|---|
| Title | JEREMY PINSON v. PABLO PRIETO, et al. | | |

The court will rule on the specific admissibility of the documents at issue at the same time it rules on the other exhibits after the parties meet and confer. Where defendants only seek to admit a particular statement in a document and plaintiff finds other portions of the document objectionable, the parties may be able to reach agreement to admit only an excerpt of the document, where that can be done without altering the pertinent character of the document or rendering it misleading.

### 3. Plaintiff's Motion in Limine No. 3

In plaintiff's third motion in limine, she seeks an order precluding defendants from presenting any evidence or testimony that questions her transgender status or otherwise uses her transgender status to attack her credibility. Plaintiff also requests that the court allow her to wear gender-appropriate civilian clothing during trial, including makeup, and allows for no shackling to be visible or known to the jury.

As discussed at the hearing, plaintiff did not identify as transgender while she was at USP Victorville, and it was not a factor in her claimed need for protection while at USP Victorville. Consequently, although plaintiff's current transgender status will be referenced at trial, it is not at issue in this case, and any attack on the legitimacy of her transgender status would be improper.

The court appreciates the security concerns posed by allowing plaintiff to change into street clothes and put on makeup while housed in a prison; however, as to the clothing, the court believes those security concerns may be accommodated by allowing plaintiff to change into street clothes before she appears by video at trial and then change back to prison clothing before she returns to her regular housing unit. Thus, the court orders that during the trial plaintiff be permitted to wear the street clothing, which may be feminine in nature, that her counsel intends to send to the prison for this purpose. As the commissary list the court has reviewed online for the Terre Haute Federal Correctional Complex does not include makeup, the court will not order that plaintiff be allowed to wear makeup for trial.

In terms of shackling, the court orders that the prison may shackle plaintiff during trial as it sees fit, with the limitations that: (1) the shackling may not be visible while plaintiff is on the video screen during trial; and (2) at least while plaintiff is testifying, her arms may not be shackled.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-811-SP | Date | October 6, 2016 |
|---|---|---|---|
| Title | JEREMY PINSON v. PABLO PRIETO, et al. | | |

### C. Defendants' Motions in Limine

#### 1. Defendants' Motion in Limine No. 1

Defendants move to exclude the expert testimony of Dr. Luigi Di Stefano. Defendants argue the testimony should be excluded because plaintiff did not timely produce Dr. Di Stefano's expert report, and that the delay was neither harmless to defendants nor justified under the circumstances.

Federal Rule of Civil Procedure 37(c)(1) states that "if a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Under the court's September 2, 2015 scheduling order following the reopening of discovery, preliminary expert disclosures were due March 15, 2016 and later extended to March 29, 2016. Plaintiff identified Dr. Di Stefano on March 29, 2016 but no expert report was included. According to defendants, plaintiff's counsel then became unresponsive when defendants inquired as to the availability of Dr. Di Stefano and plaintiff's other experts for depositions, prompting defendants to serve deposition subpoenas for Dr. Di Stefano and other experts. Plaintiff eventually informed defendants Dr. Di Stefano would be made available for deposition on August 12, 2016. Plaintiff produced Dr. Di Stefano's report on July 29, 2016, two weeks before the scheduled deposition, and four months after the March 29, 2016 disclosure deadline. During his deposition, Dr. Di Stefano testified he was first contacted about plaintiff in May or June 2016, and was retained by plaintiff's counsel in early June 2016.

Plaintiff's counsel claims Dr. Di Stefano's report was submitted late because of failed efforts to arrange for Dr. Di Stefano to conduct a physical examination of plaintiff. The court finds this is not adequate justification for the four-month delay in production of Dr. Di Stefano's report. Plaintiff could have sought an extension of time from the court, but did not.

Whether this delay was essentially harmless is a closer question. Defendants claim they were prejudiced by the late report because they only had two weeks to review Dr. Di Stefano's report and consult their own experts about a rebuttal prior to Dr. Di Stefano's August 12, 2016 deposition. They did not have the opportunity to designate an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-811-SP | Date | October 6, 2016 |
|---|---|---|---|
| Title | JEREMY PINSON v. PABLO PRIETO, et al. | | |

emergency room doctor to rebut Dr. Di Stefano's testimony and challenge his methodology as a peer. In addition, Dr. Di Stefano's report was unknown to them during the April 2016 deposition of Lilia Castillo, a physician's assistant who treated plaintiff following her assault. Thus, defendants were unable to ask Ms. Castillo about the bases for Dr. Di Stefano's opinions regarding her treatment of plaintiff, while Dr. Di Stefano, if allowed to testify, will be able to comment on Ms. Castillo's treatment.

The court finds there has been some prejudice to defendants, but it can be mitigated to the extent that it will be essentially harmless at trial. Given the nature of Dr. Di Stefano's testimony, as discussed below, it is not particularly pertinent to Ms. Castillo's testimony. Further, defendants' expert Dr. Pelton may rebut Dr. Di Stefano's testimony. Although this may not be ideal, again, given the limited testimony Dr. Di Stefano will offer, it should be sufficient for defendants' purposes. Thus, the court will permit Dr. Di Stefano to testify.

## 2. **Defendants' Motion in Limine No. 2**

Defendants move to exclude any evidence or argument regarding the possibility of indemnification for any of the individual defendants. Defendants claim this evidence is irrelevant to liability or damages under Rule 401 and unfairly prejudicial under Rule 403. Defendants set forth federal authority demonstrating that the federal government is not required to indemnify any federal employee sued in his individual capacity, and that any requests for indemnification are not entertained until an adverse judgment or award has been entered. Defendants cite to Ninth Circuit authority indicating evidence of insurance or other indemnification is not admissible on the issue of compensatory and punitive damages in the § 1983 context. *See Larez v. Holcomb*, 16 F. 3d 1513, 1518-19 (9th Cir. 1994).

Plaintiff do not oppose this motion, but rather seek an accompanying jury instruction informing the jury the government has the discretion to pay for a damages award and may still elect to do so. Plaintiff also asks that the court preclude defendants from suggesting to the jury that a damages award will be collected out of the individual defendants' personal bank accounts.

The court finds, under *Larez*, the possibility of indemnification is not something the jury may be informed of, and thus the court grants this motion. Although defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-811-SP | Date | October 6, 2016 |
|---|---|---|---|
| Title | JEREMY PINSON v. PABLO PRIETO, et al. | | |

may not mislead the jury with argument that any compensatory damages award will necessarily come out of the defendants' own pockets, they may accurately inform the jury – as should be apparent from the instructions – that plaintiff's claims are brought against defendants individually, not the government as a whole. Assuming no misleading statements, the instruction requested by plaintiff should not be needed.

> **3.      Defendants' Motion in Limine No. 3**

Defendants move to exclude any evidence or argument regarding certain corruption complaints and resulting investigations by the Justice Department's Office of Inspector General ("OIG"). The OIG documents fall into three categories: (1) the documents they refer to as the "Pinson file," concerning an investigation initiated at plaintiff's request six months after the April 2008 assault regarding defendant Prieto, which OIG found unsubstantiated; (2) certain letters plaintiff claims to have sent prior to the April 2008 assault complaining of corruption at USP Victorville; and (3) documents concerning an OIG investigation of former defendant Richard Bourn. Defendants claim this evidence is irrelevant to plaintiff's claims in this case and sufficiently attenuated to plaintiff's April 9, 2008 assault so as to confuse the jury; unduly prejudicial under Rule 403 in part because the OIG's internal standards for its conclusions during investigations differs from the applicable preponderance of the evidence standard here; and improper character evidence concerning defendant Pablo Prieto under Rule 404(b).

Plaintiffs do not oppose the exclusion of the Pinson file, except for one letter in the file written by plaintiff two weeks after the assault saying she needed help because she was attacked. Given the other evidence that will be admitted in this case that is inconsistent with plaintiff's claims, the court finds plaintiff will be permitted to introduce the letter, but the remainder of the Pinson file will be excluded.

The other letters plaintiff sent are relevant, but may lack adequate foundation to be admitted. In particular, plaintiff claims to have given the letters to a correctional officer to mail, but there is no proof they were ever received by any defendant in this case, or anyone at all. On balance, the court will likely allow the letters to be admitted, and leave whether the letters were ever received to be determined by the jury; however, the parties may renew this issue at trial.

As to OIG's Bourn investigation file, defendants claim the OIG documents are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-811-SP | Date | October 6, 2016 |
|---|---|---|---|
| Title | JEREMY PINSON v. PABLO PRIETO, et al. | | |

irrelevant because plaintiff was not a complainant in the materials in the file, and the investigation did not concern any of the remaining defendants. Rather, it concerned other prison employees, including Richard Bourn and Byron Hurte. Plaintiff opposes the motion, arguing the OIG investigation documents demonstrate bias that motivated Hurte to prepare an investigation report of plaintiff's assault that protected certain members of certain gangs. Plaintiff also claims the OIG investigation documents are not impermissible character evidence because they are not being used to show actions in conformity, but rather corroborate plaintiff's claims of corruption at Victorville and provide motive for defendants to silence plaintiff.

Although plaintiff did not allege any of the corruption at issue in the Bourn file, the court finds at least portions of the file should be admitted. Bourn and Hurte are expected to be trial witnesses, and thus certain documents may be used to impeach them. This is particularly the case for Hurte, who conducted the investigation into plaintiff's assault and, according to plaintiff, helped to cover up actions by certain Aryan Brotherhood members. As the Bourn file concludes Hurte improperly granted privileges to the Aryan Brotherhood, it may be used to impeach Hurte consistent with plaintiff's allegations.

Whether portions of the Bourn file may also be admitted to corroborate plaintiff's allegations of general corruption at Victorville is a closer question. The corruption at issue is different, and plaintiff was not one of the complainants, and thus it is unclear that it really corroborates plaintiff's claims. As part of the parties' efforts to meet and confer about documents, plaintiff should identify specific portions of the file she wishes to use. If the parties are unable to reach agreement, the court will consider the admissibility of the portions plaintiff proposes along with the other proposed exhibits.

**IV.
MOTIONS TO EXCLUDE EXPERT TESTIMONY**

**A.    Legal Standard**

Federal Rule of Evidence 702 requires that a testifying expert be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Rule 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-811-SP | Date | October 6, 2016 |
|---|---|---|---|
| Title | JEREMY PINSON v. PABLO PRIETO, et al. | | |

Under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), a trial judge acts as a "gatekeeper" to insure that expert testimony "is not only relevant, but reliable." *Id.* at 589. The court has broad discretion in assessing both requirements. *See U.S. v. Alatorre*, 222 F.3d 1098, 1100 (9th Cir. 2000). The reliability requirement ensures "that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999).

The offering party must show by a preponderance of the evidence: (1) that the expert is qualified to render the opinion; and (2) that the opinion offered has adequate support. *Daubert*, 509 U.S. at 588-90. Expert testimony is not admissible if it is speculative. *See Gen. Elec. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997). To satisfy the relevance requirement, the proffered expert testimony must assist the trier of fact in understanding or determining a fact in issue. *Daubert*, 509 U.S. at 591. In assessing relevance, the court looks to the governing substantive legal standard.

**B.     Defendants' Motion to Exclude Expert Testimony**

In addition to their first motion in limine discussed above, defendants also move to exclude the testimony and opinions of plaintiff's expert Dr. Di Stefano as improper and unreliable expert testimony. Dr. Di Stefano's report presents three opinions:

1. Based upon my medical experience and review of the record in this case, it is reasonable to say that the wound visible on plaintiff's forehead is consistent with an injury caused by a sharp object.

2. To the extent plaintiff suffered stab wounds in her left shoulder, left chest/ribs, abdomen and right thigh, those injuries would not be reflected in the photographic record as those areas of Ms. Pinson's body are not depicted in the photographs taken of Pinson on 4/9/08.

3. The plaintiff suffered multiple contusion (sic) on his body, likely due to blunt force trauma, which resulted in a self-assessed pain level of 9 out of 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-811-SP | Date | October 6, 2016 |
|---|---|---|---|
| Title | JEREMY PINSON v. PABLO PRIETO, et al. | | |

Docket no. 384, Ex. B at 2. Defendants argue Dr. Di Stefano's testimony should be excluded because his analysis fails to meet the reliability standards for expert testimony, and also argue Dr. Di Stefano's first two opinions will not assist the jury.

Defendants argue Dr. Di Stefano's testimony is unreliable because plaintiff provided Dr. Di Stefano with a limited and incomplete set of medical records and other documents from this case, and because that limited set of documents is insufficient to support his subsequent opinions. Defendants particularly point to the fact that Dr. Di Stefano was not provided with medical records documenting plaintiff's negative x-ray of her arm following the assault, despite Dr. Di Stefano indicating he typically and commonly refers to x-rays in his practice. Defendants also note Dr. Di Stefano was allowed to view photographs taken of plaintiff following the assault in order to reach his second opinion, despite Dr. Di Stefano indicating he does not use photographs to treat or diagnose patients. Plaintiff opposes the motion on the grounds that Dr. Di Stefano reviewed only relevant medical records and other documents in forming his opinions; he did not opine as to whether plaintiff broke her arm.

The court finds any questions regarding Dr. Di Stefano's methodology goes to the weight of his opinions rather than their admissibility. Defendants may cross examine Dr. Di Stefano regarding the limited document he reviewed; however, given that Dr. Di Stefano does not opine regarding plaintiff's arm, the court finds his testimony sufficiently reliable to be presented to the jury.

Defendants also argue Dr. Di Stefano's first two opinions, regarding plaintiff's forehead laceration and the photographs of plaintiff's body following the assault, will not assist the jury at trial and should therefore be excluded on that basis. Defendants argue Dr. Di Stefano's first opinion is insufficiently definite to be admissible. They claim Dr. Di Stefano's second opinion is "merely a conditional statement about what may be true about the photographs if there are any stab wounds," and in any event, a "commentary about what the photographs may or may not depict is a matter of common experience, not testimony based on specialized knowledge." Docket no. 383 at 11.

Dr. Di Stefano's first opinion, that plaintiff's forehead laceration is consistent with injury by a sharp object, may not be conclusive, but that does not mean it will be of no assistance to the jury. It at least tends to corroborate plaintiff's testimony that her attackers used a sharp object, and as such, the court will not exclude it.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-811-SP | Date | October 6, 2016 |
|---|---|---|---|
| Title | JEREMY PINSON v. PABLO PRIETO, et al. | | |

Dr. Di Stefano's second opinion – that if the stab wounds are to areas not depicted in the photographs, the photographs would not depict the wounds – is another matter. Dr. Di Stefano is essentially offering to testify to a matter of simple logic and common experience. The court appreciates the difficulties plaintiff faces in testifying by video link in the trial. Nonetheless, this does not mean Dr. Di Stefano should be permitted to testify to something the jury can logically infer on its own. Plaintiff's counsel may argue to the jury that the photographs are irrelevant to determining whether plaintiff was stabbed in spots not shown in the photographs, without the testimony of Dr. Di Stefano on this issue. Thus, the court will preclude Dr. Di Stefano from testifying to his second opinion.

**C.      Plaintiff's Motions to Exclude Expert Testimony**

**1.      Plaintiff's Motion to Exclude Expert Testimony No. 1**

Plaintiff moves to partially exclude the expert testimony of D. Scott Dodrill. Dodrill is a correctional consultant with over 35 years of experience working for BOP. Dodrill provided an expert report in March 2016 presenting three opinions:

1. Classification and placement of inmate Jeremy Pinson into USP Victorville was appropriate. Furthermore, placement of Pinson in to general population by USP Victorville staff was consistent with all BOP policies and regulations. This finding is based on Pinson's security needs, all the information available to staff at that time and in fact to Pinson's own acceptance of the general population designation.

2. There is no evidence that any BOP staff conducted themselves in anything other than a manner consistent with BOP policies and procedures while fulfilling their assignments during the time that inmate Pinson was housed at USP Victorville. It is my opinion that any claims made that staff ignored indicators of danger for inmate Pinson's safety are unfounded and not supported by the records in this case.

3. Without prior knowledge of a pending assault, it is virtually impossible for staff of a correctional facility to prevent any inmate from attacking another person, be it inmate or staff. This is true of **ALL** correctional facilities.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-811-SP | Date | October 6, 2016 |
|---|---|---|---|
| Title | JEREMY PINSON v. PABLO PRIETO, et al. | | |

Docket no. 385-1, Ex. 5 at 2.

     Plaintiff does not move to exclude Dodrill's testimony to the extent it concerns what the BOP policies and procedures were during the relevant period with respect to inmate requests for protective custody. Rather, plaintiff seeks to exclude Dodrill's testimony to the extent Dodrill offers opinions that: state assessments of plaintiff's credibility; speculate about what actually occurred during key disputed events during plaintiff's time at Victorville; concern the propriety of her placement at Victorville, which allows Dodrill to discuss improper character evidence of plaintiff's disciplinary infractions prior to arriving at Victorville; discuss plaintiff's irrelevant gang history, indirectly attacking her credibility; rely on the report from Lt. Hurte concerning plaintiff's April 9, 2008 assault, because the report constitutes inadmissible hearsay; and lack proper qualification, such as whether the medical records demonstrate plaintiff lied about being stabbed, whether certain gang dynamics contributed to plaintiff's assault, and whether there is a general change in attitude among federal inmates towards those who cooperate with authorities.

     Defendants respond to plaintiff's motion in part by offering a detailed description of the deposition of one of plaintiff's experts, Harvey Cox. They do not move to exclude Cox's testimony, but argue whatever applies to Dodrill's testimony applies equally to Cox's. The court agrees; Dodrill and Cox will be held to the same standards at trial.

     Certain of plaintiff's arguments are well taken. Dodrill may testify to what should have happened under BOP policies and regulations, but may not testify to what actually did happen, as he is not a percipient witness. Although Dodrill and Cox may testify to the basis for their opinions, they may not opine as to whether plaintiff is credible; that is an issue for the jury. Dodrill also lacks medical qualifications to opine based on plaintiff's medical records as to whether she was stabbed. But Dodrill is qualified to testify to gang dynamics in prison and the attitude among federal inmates based on his experience. That Dodrill did not work at USP Victorville is a matter on which he may be cross examined, but does not make his opinions inherently unreliable.

     Plaintiff contends the propriety of her placement at USP Victorville is no longer an issue in this case, and therefore Dodrill's opinion on this topic should not be admitted. But although the propriety of her placement is no longer part of plaintiff's claim, the propriety of her placement in the general population at USP Victorville is relevant to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-811-SP | Date | October 6, 2016 |
|---|---|---|---|
| Title | JEREMY PINSON v. PABLO PRIETO, et al. | | |

whether defendants appropriately addressed any requests plaintiff made for protection. This is more a matter of background information, and thus there are limits to how much of plaintiff's history Dodrill may recount. But Dodrill may offer some testimony concerning plaintiff's placement and assessed security needs.

As to Hurte's report, defendants contend an expert such as Dodrill need not rely on facts admissible in evidence, but rather may rely on inadmissible evidence of a type reasonably relied upon by experts in the particular field. This is clearly the law under Federal Rule of Evidence 703, and as such, Dodrill may rely on Hurte's report, which is a record located within plaintiff's central BOP file, and was created by BOP staff. To the extent Dodrill relied on statements from other inmates as represented in the Hurte report, which plaintiff argues constitute hearsay-within-hearsay, defendants argue these statements are admissible for the non-hearsay purpose of demonstrating their effect on the listener, here being Hurte. The court agrees up to a point. Hurte may be able to recount those statements in his testimony. And Dodrill may rely on the findings of Hurte's investigation. But Dodrill may not simply act as a conduit to introduce hearsay testimony at trial. Indeed, under Rule 703, during his direct examination Dodrill may not disclose hearsay or other inadmissible evidence on which he relied in forming his opinion unless the probative value of the inadmissible evidence to helping the jury evaluate the opinion substantially outweighs its prejudicial effect. That may be true as to the Hurte report, to which findings Hurte will presumably testify himself at trial, but it is not true for the witness statements in the report.

Finally, defendants argue that to the extent the court is concerned Dodrill's opinions invade the province of the jury, Dodrill may properly offer those opinions through hypothetical questions. The court agrees, as discussed at the hearing. Although plaintiff requested Dodrill subject himself to further deposition or issue a revised report as to these hypothetical opinions, the court finds this unnecessary. Dodrill, Cox, and every other expert will be constrained to offering hypothetical opinions within the reasonable limits of the opinions offered in their expert reports.

### 2. Plaintiff's Motion to Exclude Expert Testimony No. 2

Plaintiff moves to exclude the expert testimony and opinions of Ralph Ihle, Ph.D, a psychologist with nearly thirty years of experience with BOP and other correctional institutions. Dr. Ihle provided an expert report in March 2016 opining that plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-811-SP | Date | October 6, 2016 |
|---|---|---|---|
| Title | JEREMY PINSON v. PABLO PRIETO, et al. | | |

"most likely" has an Antisocial Personality Disorder with Borderline Personality Disorder features. Docket no. 386-1, Ex. A at 7. Dr. Ihle also opined that the April 9, 2008 assault was "most likely due to the manifestations of the personality disorder, that is during states of boredom, to generate attention, [plaintiff] may have made statements to the inmates on his unit that inflamed his situation, leading to his assault," and that the "available information seems to support [plaintiff] wanting to be in general population at USP Victorville after spending so much time in SHU at prior institutions." *Id.* at 11.

Plaintiff claims Dr. Ihle's opinions are not the product of reliable principles and methods of diagnosis, violate Dr. Ihle's own practices, and are not based on sufficient facts or data because Dr. Ihle did not personally interview or observe plaintiff, and therefore admitted he cannot render a "definite" diagnosis of plaintiff. Plaintiff also argues this diagnosis is irrelevant and unduly prejudicial. In addition, plaintiff argues Dr. Ihle's opinion that plaintiff "may have made statements" to other inmates is speculative, lacks evidentiary support, and improperly attacks plaintiff's credibility. Plaintiff also contends Dr. Ihle's opinion that plaintiff most likely wanted to be in Victorville's general inmate population improperly invades the province of the jury in assessing plaintiff's credibility.

The court need not address the reliability of the methodology Dr. Ihle used to render his diagnosis and opinions, because the court finds Dr. Ihle's testimony should be excluded in any event as irrelevant and speculative. In particular, Dr. Ihle's first opinion – that plaintiff most likely suffers from a personality disorder – is not itself relevant to any issue in this case. Plaintiff has abandoned all claims of PTSD from the incident and emotional distress damages. As such, Dr. Ihle's diagnosis is relevant only as the basis for his second opinion, that the April 9, 2008 assault was most likely caused by plaintiff making statements due to her personality disorder.

That second opinion is relevant to the issues in the case, but it is nothing more than speculation. Based on Dr. Ihle's diagnosis, coupled with the Hurte report and plaintiff's prison history, he speculates plaintiff may have provoked other inmates, leading to her assault. As noted above, an expert may rely on hearsay like the Hurte report if he is applying his expertise to it; however, that is not a fair account of what Dr. Ihle does here. Dr. Ihle essentially accepts wholesale the account in the Hurte report, and then – by offering a plausible psychological explanation for why plaintiff would have done what other inmates reported – offers those other inmates' accounts as established fact. This

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-811-SP | Date | October 6, 2016 |
|---|---|---|---|
| Title | JEREMY PINSON v. PABLO PRIETO, et al. | | |

opinion does not conform to Rule 703, and it is neither reliable nor helpful to the jury.

Dr. Ihle's third opinion, that plaintiff wanted to be in the general population, is similarly speculative. Dr. Ihle has no sound basis for opining as to what plaintiff wanted.

Finally, plaintiff seeks to exclude an opinion Dr. Ihle offered during his deposition, which plaintiff claims was not contained in the March 2016 report. Specifically, Dr. Ihle expressed an opinion at deposition that plaintiff was malingering the symptoms of several severe disorders. As explained by Dr. Ihle, this is not really a separate opinion or diagnosis, but a rather a part of his other opinions. As such, it too should be excluded.

In short, the court grants plaintiff's motion to exclude Dr. Ihle's testimony in full.

### 3. Plaintiff's Motion to Exclude Expert Testimony No. 3

Plaintiff moves to exclude the testimony and opinions of James K. Pelton, M.D. Dr. Pelton is the BOP Regional Medical Director in Aurora, Colorado. Plaintiff contends Dr. Pelton's opinions were not disclosed, are speculative and unsound, and that Dr. Pelton lacks sufficient qualifications to render his opinions.

Defendants designated Dr. Pelton as an expert to testify to "the nature and extent of injuries plaintiff alleges from the April 9, 2008 incident at Victorville USP and related issues." Docket no. 387, Ex. C at 2. Defendants further indicated Dr. Pelton will offer testimony regarding whether plaintiff's "claims that he suffered eight stab wounds and a broken bone in his arm in that incident are accurate according to the medical documentation." *Id.* Defendants stated Dr. Pelton will "opine that plaintiff did not receive any stab wounds in the April 9, 2008 incident, nor did he receive any broken bone injuries." *Id.* at 3.

Defendants also noted Dr. Pelton will offer opinion testimony "regarding Plaintiff's claims that he suffered injuries in the April 9, 2008 incident that continue to affect Pinson today or had residual effects after April 9, 2008 through the present time," in particular that "the medical records do not support these claims." *Id.* Defendants then list several documented incidents from the 12 months before the April 9, 2008 assault, and state plaintiff has engaged in "self-inflicted injuries, including suicide attempts, self-inflicted wounds to produce bleeding, and physical altercations with or assaults on other

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-811-SP | Date | October 6, 2016 |
|---|---|---|---|
| Title | JEREMY PINSON v. PABLO PRIETO, et al. | | |

inmates including taking a cellmate hostage and starting a fire on his cellblock," with these incidents taking place "before and after the April 9, 2008 incident." *Id.* at 3-6. Finally, defendants indicated Dr. Pelton will testify that plaintiff's claim that the assault "resulted in residual or long lasting injuries and/or exacerbated a pre-existing Post Traumatic Stress Disorder" is incorrect. *Id.* at 6.

Based on this, any pertinent testimony Dr. Pelton may offer was plainly disclosed in advance. But the court finds that, in light of the nature of plaintiff's claims at trial, including plaintiff's expressed abandonment of any claim for damages based on emotional distress, the only relevant testimony Dr. Pelton may offer is that concerning plaintiff's physical injuries from the April 2008 assault and the physical cause thereof, such as whether they were caused by a sharp object. To the extent the physical cause of the injuries was not clearly disclosed as a topic for his testimony, Dr. Pelton may nonetheless offer an opinion in rebuttal to Dr. Di Stefano's testimony to mitigate the prejudice to defendants from plaintiff's late disclosure of Dr. Di Stefano's report, as discussed above.

Any opinion regarding plaintiff's transgender status is irrelevant as discussed above. And putting aside the question of whether Dr. Pelton is qualified to opine as to plaintiff's psychological disorders, such testimony is irrelevant in light of plaintiff's abandonment of her claim for emotional distress damages, and as discussed above with respect to Dr. Ihle.

Finally, although the court now limits Dr. Pelton's testimony to the physical injuries plaintiff suffered on April 9, 2008, the court does not discount the possibility that plaintiff may open the door to testimony regarding injuries plaintiff suffered before or after April 9, 2008. That could occur, for example, if plaintiff were to testify to having suffered an injury on April 9, 2008 that Dr. Pelton can testify occurred on a different date. In that event, the court will take up the matter during trial.

# V.
# CONCLUSION

IT IS THEREFORE ORDERED that the parties' motions in limine and motions to exclude expert testimony be granted in part and denied in part as set forth above, with certain issues reserved for later adjudication as also set forth above.